# United States District Court
# District of Massachusetts

| | | |
|---|---|---|
| ————————————————  ) | | |
| ALEXANDER HILTON  ) | | |
|   ) | | |
| v.  ) | | **CIVIL ACTION** |
|   ) | | **No. 13-11710-TSH** |
| JOHN KERRY, UNITED STATES  ) | | |
| SECRETARY OF STATE; ERIC HOLDER,  ) | | |
| UNITED STATES ATTORNEY GENERAL;  ) | | |
| JOHN BIBBONS, UNITED STATES  ) | | |
| MARSHALL, DISTRICT OF  ) | | |
| MASSACHUSETTS  ) | | |
| ————————————————  ) | | |

## MEMORANDUM OF DECISION ON ALEXANDER HILTON'S PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241
### October 22, 2013

### Introduction

On February 12, 2013, after receiving an official request from Scotland, the United States sought the extradition of Alexander Hilton ("Hilton"), a United States citizen, to the United Kingdom to face an attempted murder charge. Magistrate Judge Boal found Hilton extraditable to Scotland and issued a Certificate of Extraditability on May 17, 2013. Hilton now brings a petition for a writ of habeas corpus seeking review of the Magistrate Judge's decision. For the reasons set forth below, the petition is denied.

### Background

*Facts*

Hilton attended the University of St. Andrews in Scotland from September 2009 through March 2011. Scottish authorities allege that on March 5, 20011 Hilton attempted the murder of a fellow student, Robert Forbes, by spiking a bottle of wine with methanol, giving it to Forbes, and

encouraging Forbes to drink it. Forbes drank the wine and fell ill. He was hospitalized, became temporarily blind, and would have died without the prompt medical attention he received. Scottish authorities did not immediately press charges against Hilton, and on March 22, 2011 Hilton left Scotland to return home to the United States. On December 2, 2011 Scottish authorities charged Hilton with attempted murder and issued a warrant for his arrest.

Hilton has a long history of mental illness that continues to the present day. He currently recievesseven different medications for his mental health issues and sees a psychotherapist three times a week and a psychiatrist every other week. After Hilton was arrested and detained pursuant to the United States' complaint for extradition, he engaged in suicidal behavior.

*Procedural History*

On February 12, 2013 the United States filed a complaint seeking an arrest warrant and the extradition of Hilton, who was arrested the next day. On March 7, 2013 Magistrate Judge Boal held an extradition hearing and, on May 3, 2012, issued a decision finding Hilton extraditable to Scotland to face the charge of attempted murder along with a Certificate of Extraditability. In its decision, the Court found that Hilton conceded that a valid treaty exists, the charged crime of attempted murder is covered by the treaty, and that probable cause exists for the charged crime. Hilton argued that he should not be extradited on humanitarian grounds due to his mental illness and should not be extradited because the Scottish law only requires a majority of jurors to return a guilty verdict, which would violate the U.S. Constitution. The Court rejected these arguments, finding it is within the discretion of the Secretary of State, not the courts, to block extradition based on these issues. Hilton now brings a petition for a writ of habeas corpus seeking review of that decision.

**Discussion**

*Standard of Review*

In the United States extradition is, by statute, a two step process. *See* 18 U.S.C. § 3184. It begins with a limited inquiry by a court to determine if a treaty exists, if the crime charged is covered by the treaty, and if there is sufficient evidence to sustain the charge under the treaty. *See Matter of Extradition of Manzi*, 888 F.2d 204, 204 (1st Cir. 1989); 18 U.S.C. § 3184. If the court answers each of these questions in the affirmative, the court certifies extraditability and the case is then turned over to secretary of state who makes the ultimate decision whether or not to extradite. 18 U.S.C. § 3184; *U.S. v. Kin-Hong*, 110 F.3d 103, 110-111 (1st Cir. 1997) ("The statute establishes a two-step procedure which divides responsibility for extradition between a judicial officer and the Secretary of State." "If the judicial officer makes such a determination, [that a treaty exists, the crime is covered by the treaty, and there is sufficient evidence to sustain the charge] he shall certify to the Secretary of State that a warrant for the surrender of the relator may issue…..It is then within the Secretary of State's discretion to determine whether or not the relator should actually be extradited."). It is not the role of the court to look into the consequences of extradition. *Kin- Hong*, 110 F.3d at 110 ("The larger assessment of extradition and its consequences is committed to the Secretary of State."). The rule of non-inquiry, part of the scheme limiting the courts' review, prevents courts from looking into fairness of requesting nation's justice system or what might await the fugitive. *Id*. at 11.

A court's scope of inquiry is also limited in examining habeas corpus petitions challenging extradition proceedings. *Manzi*, 888 F.2d at 205. When reviewing a Magistrate Judge's decision to issue a certificate of extraditability, a court usually may only look at "whether the magistrate had jurisdiction to consider the matter, whether the offense charged is within the

treaty and…whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Id.*  However, the First Circuit has held that "serious due process concerns may merit review beyond the narrow scope of inquiry in extradition proceedings." *Id*. at 206.

*Hilton's Petition*

Hilton does not contest that a treaty exists, that the crime charged is covered by the treaty, or that there is sufficient evidence to sustain the charge.  *See Manzi*, 888 F.2d at 205.  Nor does Hilton deny that the Magistrate Judge had jurisdiction to consider the matter or that there was evidence warranting the finding that there was reasonable ground to believe the accused guilty. *See id.*  Instead, Hilton argues that extradition to Scotland would violate his constitutional rights and because of the risk he would commit suicide if extradited should therefore be blocked by this Court. Hilton raises the same issues here as he did before the Magistrate Judge, that extradition should be blocked because of the nature of Scotland's criminal procedure.

*Scotland's Jury System*

Hilton argues that extradition would violate his Constitutional rights because in Scotland he could be convicted by a mere majority of eight out of fifteen jurors. Hilton notes that in the United States, the Supreme Court has upheld convictions based 9-3 and 10-2 jury verdicts, but stuck down a conviction based on a 5-1 verdict.  *See Burch v. Louisiana*, 441 U.S. 130 (1979) (striking down a 5-1 guilty verdict); *Johnson v. Louisiana*, 406 U.S. 356 (1972) (upholding a 9-3 verdict); *Apodaca v. Oregon*, 406 U.S. 404 (1972) (upholding a 10-2 verdict).  Therefore, Hilton argues, a guilty verdict based on a guilty finding of 8 out of 15 jurors would violate his Constitutional rights and the Extradition Treaty itself, which the Senate gave its advice and consent to subject to the understand that it would be implemented "in accordance with the

4

Constitution."  S. Exec. Rep. No. 109-19, *Extradition Treaty between the United States of America and the United Kingdom of Great Britain and Northern Ireland*, 109th Cong., 2d Sess. 8 (2006).

Under the rule of non-inquiry, "courts refrain from investigating the fairness of a requesting nation's justice system, and from inquiring into the procedures or treatment which await a surrendered fugitive in the requesting country."  *Kin-Hong*, 110 F.3d at 110; *see Basso v. U.S. Marshal*, 278 Fed. Appx. 886, 887 (11th Cir. 2008) ("the rule of non-inquiry prevents an extradition magistrate, without exception, from assessing the receiving country's judicial system.").  Questions regarding procedures in foreign justice systems are addressed by the executive branch, not the courts.  *King-Hong*, 110 F.3d at 111.  The rule of non-inquiry defers this assessment to that branch, and the court is to "express no judgment about a foreign nation's ability and willingness to provide justice."  *Id*. at 111 n. 12.  Therefore even if Scotland's procedure is fundamentally unfair, it is for the executive branch, rather than this Court, to prevent extradition on those grounds.

Hilton contends that the rule of non-inquiry should not apply in this case. First, he claims, it is inapplicable because the Senate was unaware of Scotland's jury system when it ratified the treaty. To support this contention, Hilton presents evidence that the Senate Judiciary Committee report recommending that the Senate ratify the treaty does not mention the Scottish jury system regarding criminal verdicts. This fact alone in no way proves the Senate was unaware of the jury system, which has been in place in Scotland since the sixteenth century. Moreover, it is the responsibility of the executive branch to enter into extradition treaties, and there is no support for the proposition that the courts may weigh in on these decisions.  U.S. Const. Art. II § 2.

Next, Hilton notes that some courts have expressed uneasiness with the rule of non-inquiry, and could "imagine situations where the relator, upon extradition would be subject to procedures or punishment so antipathetic to a federal court's sense of decency as to require reexamination of the principle." *Galina v. Fraser*, 278 F.2d 77, 79 (2d Cir. 1960).  However, no court has yet made an exception to the rule of non-inquiry.  *Hoxha v. Levi*, 465 F.3d 554, 564 (3d Cir. 2006) ("The exception [to the rule of non-inquiry] remains theoretical, however, because no federal court has applied it to grant habeas relief in an extradition case.").  Hilton urges that this case presents the situation to do so. This Court disagrees. First, the United Kingdom is "one of this country's most trusted treaty partners," not a country likely to have procedures so unfair that the Court should disregard an established rule.  *Kin-Hong*, 110 F.3d at 112.  Second, courts have continued to apply the rule of non-inquiry when considering extradition where the relator would face far worse than a jury system requiring only a majority for conviction.  *See Kin-Hong*, 110 F.3d at 111 n. 12 (noting that the rule of non-inquiry is appropriate even regarding "extradition treaties with some of the world's most oppressive and arbitrary regimes."); *Hoxha*, 465 F.3d at 563 (applying the rule of non-inquiry despite relator's claim that he would be tortured if extradited to Albania and explaining such considerations are within the purview of the executive branch); *In re Extradition of Tawakkal*, 2008 WL 3895578, *12-13 (E.D. Va. 2008) (applying the rule of non-inquiry despite torture and corruption in Pakistan and noting this was a matter for the State Department to consider).

The rule of non-inquiry applies in this case and prevents the Court from looking into the fairness of the procedures that await Hilton if extradited. This consideration is a matter for the Secretary of State, not the Court.

*Hilton's Mental Condition*

Hilton asks this Court to block extradition because of Hilton's serious mental health issues. He argues that extraditing him in his condition violates his constitutional rights and therefore the extradition is reviewable by the Court. This Court is not unsympathetic to Hilton and his mental and personal situation. It is clear that Hilton does suffer from significant mental illness that could make him a suicide risk if extradited However, under United States extradition procedures this issue again is appropriately addressed by the Secretary of State, not the Court. Hilton argues, however, that this Court does have the power to review the issue in this case because extradition would violated Hilton's due process rights and because the principle of reciprocity should give the Court the authority to do so in this case

Courts have consistently held that humanitarian concerns, such as the one Hilton raises, surrounding extradition are exclusively within the purview of the Secretary of State. *See Kin-Hong*, 110 F.3d at 111 n. 12 ("it is appropriate for the Secretary to exercise discretion on humanitarian grounds."); *Ahmad v. Wigen*, 910 F.2d 1063, 1066 (2d Cir. 1990) ("the degree of risk to [the relator's] life from extradition is an issue that properly falls within the exclusive purview of the executive branch."); *Hoxha*, 465 F.3d at 563 ("humanitarian considerations are within the purview of the executive branch and generally should not be addressed by the courts in deciding whether a petitioner is extraditable."); *Prasoprat v. Benov*, 421 F.3d 1009, 1016 (9th Cir. 2005) ("it is the role of the Secretary of State, not the courts, to determine whether extradition should be denied on humanitarian grounds"); *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 830 (11th Cir. 1993) ("humanitarian consideration are matters properly reviewed by the Department of State").   .

Hilton argues that this Court does have the power to review the issue raised by Hilton regarding his mental health because it is a matter of the United States denying Hilton his due process rights, which is reviewable by the courts, rather than a humanitarian concern. The First Circuit has recognized that "serious due process concerns may merit review beyond the narrow scope of inquiry in extradition proceedings." *Manzi*, 888 F.2d at 206 (citing *Romeo v. Roache,* 820 F.2d 540, 544 (1st Cir.1987)).  In the cases cited by Hilton, the Courts looked into the due process considerations because the matters involved significant actions by the United States beyond the extradition of the relator.  *See Plaster v. U.S*., 720 F.2d 340, 348, 344-45 (4th Cir. 1983); *Matter of Burt*, 737 F.2d 1477, 1482-87 (7th Cir. 1984).  In *Plaster*, the Court found that extraditing the petitioner despite having granting him transactional immunity and promising the immunity would apply to both foreign and domestic prosecutions would violate petitioner's due process rights if lower court, on remand, found the immunity agreement binding.  720 F.3d at 344-45, 351-55.  In *Burt*, the Court considered the petitioner's due process claim when the United States pursued extradition after waiting 15 years and making prior decisions not to court martial the petitioner and not to extradite the petitioner.  737 F.2d at 1485-86.  Ultimately, the Court determined the United States did not violate the petitioner's due process rights by extraditing him, explaining that the country seeking extradition, not the United States, instigated the prosecution and thus the United State's conduct did not violate the constitution.  *Id*. at 1487.

Unlike *Plaster* and *Burt*, in Hilton's case there is no action by the United States beyond the extradition proceeding that might violate Hilton's due process rights. No case law suggests that courts have the authority to go beyond the limited statutorily prescribed inquiry when the extradition itself is the only action challenged. Instead, the case law clearly shows that when humanitarian concerns surrounding the extradition are raised, including those involving danger

to the relator's life, they are for the Secretary of State to consider.  *See, e.g.*, *Ahmad*, 910 F.2d at 1066; *Escobedo v. U.S.*, 62 F.2d 1098, 1106 (5th Cir. 1980) (""the degree of risk to [relator's] life from extradition is an issue that properly falls within the exclusive purview of the executive branch.").  There is no basis for this Court to review Hilton's extradition on the grounds that it would violate his due process rights because his is mentally ill; this issue can only be considered by the Secretary of State.

Hilton next suggests that the principle of reciprocity gives this Court the authority to deny extradition based on his mental illness. The essence of this argument is that because courts in the United Kingdom have, in two recent cases, denied extradition due to mental health, so too should courts in the United States. The United Kingdom Extradition Act of 2003 allowed these courts to do so, instructing judges to discharge the person or adjourn the proceeding if "the physical or mental condition of the person is such that it would be unjust or oppressive to extradite him." United Kingdom Extradition Act of 2003 § 91.  The United States is not without a mechanism for denying an extradition request based on mental illness, but no law allows the court to do so. In the United States, by statute, it is the Secretary of State who makes this decision, not the courts. However, the important fact is that both parties to the treaty may deny extradition for mental health issues, though the procedures may vary, and the principle of reciprocity is not violated.

Even if the recent actions by United Kingdom courts barring extradition based on mental illness considerations do violate the principle of reciprocity, this too is an issue for the executive branch, not the courts, to consider.  *Escobedo*, 62. F.2d at 1106 ("The question whether the United States should refuse to extradite its citizens because of [the requesting country's] failure to reciprocate is one for the executive branch, not the courts, to decide."); *see Charlton v.*

*Kelley*, 229 U.S. 447, 469-76 (1913) (noting that if the executive branch did not protest reciprocity violations "it is the plain duty of this court to recognize the obligation to surrender the appellant as one imposed by the treaty as the supreme law of the land and as affording authority for the warrant of extradition."); *Peroff v. Hylton*, 563 F.2d 1099, 1102 (4th Cir. 1977) ("Even if the claimed lack of reciprocity were construed to be a violation of treaty obligations, it would be for the Executive alone to determine whether to waive such violations or to renounce the extradition agreement."). Therefore this Court does not have the authority to block Hilton's extradition on the basis that the principle of reciprocity is being violated.

<u>Conclusion</u>

Hilton's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2441 is ***<u>denied</u>*** as provided in this Memorandum of Decision.

**SO ORDERED**

*/s/ **Timothy S. Hillman***
TIMOTHY S. HILLMAN
DISTRICT JUDGE